**COMMERCIAL SOLVENTS CORPORA-TION and the Home Insurance Company, Plaintiffs,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant.**

**No. 73 Civ. 2058.**

United States District Court,
S. D. New York.

Feb. 26, 1974.

Davis & Davis, New York City, for Commercial Solvents Corp.

Gillis & Mahoney, New York City, for The Home Ins. Co.

Townley, Updike, Carter & Rodgers, New York City, for defendant.

## MEMORANDUM

STEWART, District Judge:

The present motion before this Court continues the search for the proper forum in which to finally reach the merits of this case. This action was commenced in the New York State Supreme Court on April 11, 1973. It was then removed to federal court on May 9, 1973. Presently before us is a motion brought on July 26, 1973 for an order pursuant to 28 U.S.C. § 1404(a) transferring this action to the United States District Court for the Northern District of Oklahoma.

*Background*

This action arises out of an alleged breach of two comprehensive general liability policies and a workmen's compensation and employers liability policy. Plaintiffs seek a declaratory judgment as well as damages. An oil well explosion precipitated the case. Plaintiff Commercial Solvents Corporation (CSC) was insured under a Workmen's Compensation Policy issued by Liberty, un-

der a Comprehensive General Liability (CGL) Policy issued by Liberty and under an Excess Liability Policy issued by plaintiff The Home Insurance Company (Home). On November 11, 1970 at an oil well owned by Pan American Petroleum Corporation (Pan Am), near Owasso, Oklahoma an explosion occurred, taking the lives of nine persons and damaging the property of a third party.

The central issue in this case relates to the coverage afforded CSC by the CGL Policy for claims against CSC arising out of the explosion. The coverage under the CGL Policy turns on the question of whether CSC and Pan Am were in a joint venture together relating to the oil well near Owasso, Oklahoma. The crucial language of the policy states:

"This insurance does not apply to bodily injuries or property damages arising out of the conduct of any . . . joint venture of which the insured is a partner or member and which is not designated in this policy as a named insured."

When this case finally comes to rest in one forum, it appears that the issue to be decided is the following: What coverage is provided by Liberty's policies for claims against CSC arising out of the oil well explosion. This issue raises questions as to whether CSC and Pan Am were engaged in a joint venture at the time of the oil well explosion and did the explosion arise out of activities of the joint venture if one existed? Testimony as to the scope of the relationship between Pan Am and CSC is crucial to this question. Evidence as to the intended and actual joint activities of the two companies is also relevant.

Plaintiffs also contend that Liberty is estopped from denying coverage based on the existence of a joint venture because it did not deny coverage until May 1, 1971 and because Liberty by exercising exclusive control in the settlement negotiations committed CSC to negotiations and settlement which it otherwise would not have condoned or approved. Evidence as to the roles taken in the investigations, negotiations and settlement is necessary for the disposition of this issue. In large measure such evidence will have to be oral testimony.

*Discussion*

■ The statute under which defendant seeks transferral of the case provides:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

Under this statute, the burden to be met by a defendant seeking transfer is something less than a showing of *forum non conveniens*, the old doctrine superseded by § 1404(a).[1] But even under § 1404(a) a plaintiff still has the right to select a proper forum of his choice and such "choice should not be disturbed unless the movant demonstrates that the balance of convenience and justice weighs heavily in favor of transfer." Security National Bank v. Republic National Life Insurance Co., 364 F.Supp. 585 (S.D.N.Y.1973).

■ In deciding a motion to transfer under this section, a court must consider 1) the convenience of the parties; 2) the convenience of the witnesses; and 3) the interests of justice. Further, a case may only be transferred to a court in which the case "might have been brought."

■ In considering the last requirement first we conclude that this case might have been brought in the Northern District of Oklahoma. Defendant

---

1. See I A J Moore, Federal Practice ¶ 0.-204 at 2205 (2d ed. 1965). In Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955) the Supreme Court held that "[W]hen Congress adopted § 1404(a), it intended to do more than just codify the existing law on *forum non conveniens* . . . Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice' intended to permit courts to grant transfers upon a lesser showing of inconvenience."

Liberty is incorporated in the State of Massachusetts with its principal place of business there and has at all relevant times been authorized to do business and is doing business in the Northern District of Oklahoma. 28 U.S.C. § 1391(a) provides that venue in diversity actions such as this lies "in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose." Corporate residence for purpose of venue is "any judicial district in which it is incorporated or licensed to do business or is doing business . . . ." 28 U.S.C. § 1391(c). Liberty is the sole defendant. The Northern District of Oklahoma is therefore a district in which this case might have been brought.

In considering the convenience of the parties we find the equities to be fairly balanced. Neither defendant nor plaintiff has shown that any real inconvenience would result if the case were to be tried in the Southern District of New York. CSC is incorporated in Maryland, but its principal place of business is in New York. Home is incorporated and has its principal place of business in New York. On the issue of joint venture, three of Liberty's employee-witnesses are from Tulsa, Oklahoma, several of CSC's are based in Terre Haute, Indiana and others of CSC's are based in New York. There is no compelling argument made by either the plaintiffs or defendant as to which district would be more convenient for the parties.

■■ However, with respect to the availability and convenience of the witnesses, our conclusion is different. The possibility that a case may be tried where certain crucial witnesses could not be compelled to attend is an important consideration. Requiring a party to try his case with depositions because the place of trial is such as to prevent the party from compelling attendance of material witnesses is unacceptable when the case could be transferred to a district where attendance could be compelled and which would be convenient in other respects for both parties. Consistent with this principle courts generally transfer cases when important witnesses can not be compelled to testify in the forum, but could be subpoenaed in the transferee court.[2]

The facts before us present a situation in which the disposition of at least some of the issues will require oral testimony of non-party witnesses who are outside the subpoena power of this Court. There is some disagreement as to whether the joint venture is the crucial issue. On the papers before us, it seems clear that it is at least a significant issue.

Plaintiffs argue that oral testimony as to the existence of a joint venture would be inadmissible because of the applicability of the parole evidence rule. The fact that there is a contract between Pan Am and CSC is not dispositive of whether oral testimony is admissible in determining whether a joint venture was formed by the two corporations. The final signature on the CSC-Pan Am letter agreement was signed in Oklahoma. The contract contemplated joint activities in Oklahoma. Under Oklahoma law there seems to be some doubt whether the parole evidence rule applies to the Pan Am-CSC letter agreement, and it may be that oral testimony is admissible on this issue.[3] Liberty intends to call five employees of Pan Am to testify as to acts and conduct of Pan Am and CSC pursuant to their letter agreement and the joint program's relation to the explosion. These five witnesses are all residents of the Northern District of Oklahoma and apparently will not come to trial voluntarily. The

2. See Polaroid Corp. v. Casselman, 213 F. Supp. 379, 382–383 (S.D.N.Y.1962) ; Oglebay Norton Co. v. Bradley Transportation Line, 197 F.Supp. 443, 445–446 (N.D.Ohio 1961) ; Graphic Realty & Discount Co. v. Home Fire & Marine Insurance Co., 193 F.Supp.

421, 422 (D.Mass.1961). See also Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 511, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).

3. See Gragg v. James, Okl., 452 P.2d 579 (1969).

testimony of these witnesses may well be crucial to a determination of the joint venture issue.

■ The other substantive issue raised by plaintiffs that is relevant to this motion is the estoppel issue, discussed above, concerning Liberty's alleged control of the negotiations and settlement. Liberty plans to call nine witnesses all of whom reside in the Northern District of Oklahoma. These witnesses are not employees of parties to this case. The inconvenience and expense to these witnesses whose testimony is relevant to a central issue in the case should be avoided.

*Interests of Justice*

There are numerous other factors brought to this Court's attention by both parties which merit some discussion.

■ 1. Plaintiffs argue that defendant waived any right it may have had to move for a discretionary transfer because of undue delay in making the motion. A motion pursuant to F.R.C.P. 12(b) must be made within a specified time period. No such timeliness requirement is expressed in § 1404(a). The action was commenced on April 11, 1973, it was removed from state court on May 9, 1973, and the present motion was brought on by a notice of motion dated July 26, 1973. We find that the present motion was seasonably made and that the case is in such a preliminary stage that the granting of such motion at this time would work no injustice on the plaintiffs.

■ 2. Plaintiffs argue that defendant's motion be denied because defendant agreed that the Supreme Court of New York was to be the forum in which the case would be brought. It is contested whether such agreement was ever made, but even assuming such an agreement existed, it is not alone dispositive. Upon the basis of the affidavits we find that there was no explicit agreement between the parties as to where the case would be brought.

■ 3. The place in which significant contacts occurred should be considered as an appropriate forum. The plaintiffs argue that in this case the policy in question was negotiated and delivered in New York and in all other respects was carried out in New York. The plaintiffs miss the point as to what precisely is the issue on which this case rests. There seems to be no real argument over the meaning of the insurance policy. Rather the question of coverage based on circumstances extraneous to the insurance policy itself is determinative. Even the parties by agreement of November 1, 1971 agreed that the purpose of this litigation was to determine whether the accident arose out of a joint venture or not. Thus, the issue does not involve the construction of the CGL Policy but rather, it involves the legal consequences of the agreement between CSC and Pan Am. The status of that relationship should be determined by Oklahoma law because the final signing of the letter agreement and the activities dealt with in the contract were accomplished in the Northern District of Oklahoma.

■ We conclude that the balance of convenience of parties and witnesses and the interests of justice are decidedly in favor of defendants. The motion for transfer to the Northern District of Oklahoma is hereby granted.

So ordered.