**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 08-1515**

_____

IRINA DOLGALEVA,

             Plaintiff - Appellant,

     v.

VIRGINIA BEACH CITY PUBLIC SCHOOLS,

             Defendant – Appellee.

-------------------------------------

SHIMICA D. GASKINS, Esq.,

             Court-Assigned Amicus Counsel
             Supporting Appellant.

_____

Appeal from the United States District Court for the Eastern
District of Virginia, at Norfolk.  Walter D. Kelley, Jr.,
District Judge.  (2:06-cv-00717-WDK-FBS)

_____

Argued: December 1, 2009          Decided: January 29, 2010

_____

Before MOTZ, DUNCAN, and AGEE, Circuit Judges.

_____

Affirmed in part, reversed in part, and remanded by unpublished
opinion.  Judge Duncan wrote the opinion, in which Judge Motz
and Judge Agee joined.

_____

**ARGUED:** Shimica  D.  Gaskins,  COVINGTON  &  BURLING,  LLP,
Washington, D.C., Court-Assigned Amicus Counsel, for Appellant.
Elaine Kathryn Inman, Ann Sullivan, CRENSHAW, WARE & MARTIN,

PLC, Norfolk, Virginia, for Appellee.  **ON BRIEF:** Irina Dolgaleva, Appellant Pro Se.  Scott D. Danzis, COVINGTON & BURLING, LLP, Washington, D.C., Court-Assigned Amicus Counsel, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Dr. Irina Dolgaleva ("Dolgaleva") appeals the district court's dismissal of her complaint of national-origin discrimination under the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-2(a), and 42 U.S.C. § 1981, and its denial of leave to amend her complaint. For the reasons set forth below, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I.

Dolgaleva brought this action against Appellee Virginia Beach City Public Schools ("VBCPS"), the school system in Virginia Beach, Virginia, alleging failure or refusal to hire on the basis of national origin, in violation of Title VII and 42 U.S.C. § 1981. According to her original complaint, Dolgaleva was discriminated against on August 25, 2006. That same day, she filed a complaint with the Equal Employment Opportunity Commission (the "EEOC"). According to VBCPS's motion to dismiss, the EEOC issued a right-to-sue letter on or about September 29, 2006, and Dolgaleva thereafter filed her complaint in the district court for the Eastern District of Virginia on December 26, 2006.

On May 8, 2007, VBCPS moved to dismiss Dolgaleva's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6),

3

asserting that the bare and conclusory allegations in her complaint were insufficient to state a claim upon which relief could be granted. VBCPS's motion to dismiss also asserted that Dolgaleva could not make out a claim of discrimination in any event, "because the person who was hired is of the same national origin as she." J.A. 11.

On May 29, 2007, Dolgaleva filed a response to the motion to dismiss that asserted facts in support of her claim, and which proffered exhibits purporting to show that her qualifications were superior to those of the candidate VBCPS had hired, Natalia Liapina, from Belarus. According to Dolgaleva, Liapina had no experience teaching Russian, and had presented false proof of a bachelor's degree from a Russian university. Dolgaleva's resume, on the other hand, reflected a PhD in linguistics from a Russian University and twenty years' relevant teaching experience. Dolgaleva also asserted that Russia and Belarus are not the same place of national origin, and that VBCPS's Human Resources department would have been aware of this distinction because it would have been noted in the respective passports. Finally, Dolgaleva elaborated on the hiring process, claiming that when she interviewed with VBCPS on August 24, 2006, she had been assured that the job was still open, yet on August 25, VBCPS told her the job had been given to Liapina in early August. VBCPS, through one Dr. Eidson, also allegedly

4

informed Dolgaleva that it had not wanted to hire her, and that her credentials were worthless, because she is Russian.

On October 16, 2007, Dolgaleva filed a motion to amend her complaint in two respects.[1] First, she sought to add a claim of religious discrimination. Second, she sought to supplement her national-origin discrimination claim. The amended complaint expressly incorporated the response by reference.

In support of her religious discrimination claim, Dolgaleva alleged that when she inquired about why she had not been considered for the teaching position, VBCPS officials told her that her superior credentials and teaching experience were worthless because, among other things, she had previously taught at Brigham Young University, a school known to be associated with the Church of Latter Day Saints. She also acknowledged that she submitted her claim of religious discrimination to the EEOC on July 10, 2007--which, we note, would be 320 days after August 25, 2006, the day VBCPS allegedly discriminated against her.

In support of her national-origin claim, Dolgaleva contended that VBCPS materially deviated from its standard course of hiring procedures in hiring Liapina. VBCPS procedures required it to screen applicants for suitability, then interview

---

[1] She also attached the actual amended complaint to her motion.

those qualified. Successful interviewees would receive second interviews with subject-area specialists, who would work with Human Resources to create a list of finalists. Finalists would next meet with the principals of schools at which they might actually work; the principals would then identify their preferences. The final recommendations would be forwarded to the school board for a final determination. In contrast, Dolgaleva asserted, Liapina was hired in early August 2006-- according to the record, on either August 7 or August 14--after meeting with principals in two schools who never knew that Dolgaleva had been selected for an initial interview. Dolgaleva, who had applied for the job in May 2006, was scheduled to interview on August 24. At her interview, VBCPS assured Dolgaleva that the position was still vacant. But, the day after, August 25, Dolgaleva learned that the position had gone to Liapina.

On October 19, 2007, three days after Dolgaleva filed her motion to amend, the district court held its hearing on VBCPS's motion to dismiss. At the hearing, the district court said that it had received Dolgaleva's amended complaint. VBCPS responded that it had not received the amended complaint, apparently because it had been mailed rather than filed electronically.

The district court first heard from VBCPS on its motion to dismiss under Rule 12(b)(6). VBCPS argued for the first time

6

that it employed a facially neutral, rolling hiring process. VBCPS alleged that within that process, Liapina had applied and interviewed first, and then received the job based on her own superior credentials, experience (including time with VBCPS itself as a substitute teacher), and references. VBCPS also reiterated that it could not have discriminated against Dolgaleva, a Russian, by hiring Liapina, a Belarusian, when the two share the same national origin, the former Soviet Union.

The district court then engaged in a colloquy with Dolgaleva during which it tried to develop her allegations and further understand why she felt she had been discriminated against. Dolgaleva explained that she brought her action because she had not been hired for the position and had been deprived of an opportunity to be considered for it. When she had inquired as to why she was not considered, Dolgaleva was told that her Russian credentials were worthless, and that VBCPS did not like that she had taught at Brigham Young University. In response to this explanation, VBCPS again asserted the nature of its facially neutral, rolling hiring process, explaining that Liapina was simply hired because she applied and was interviewed first, and found to be desirable for the job.

The district court granted VBCPS's motion to dismiss, concluding that Dolgaleva had not been hired due to VBCPS's facially neutral, rolling hiring process, rather than any

7

discriminatory motive. The district court also accepted VBCPS's explanation that it could not have discriminated against Dolgaleva when it hired Liapina, stating that although "Russia and Belarus are now two countries and occasionally . . . don't get along . . . you've got to be filled by . . . somebody outside your group, and this is . . . close enough." J.A. 76. Subsequently, on April 3, 2008, the district court issued a memorandum opinion and order (the "order") dismissing Dolgaleva's complaint with prejudice.

The district court's order dismissing Dolgaleva's national-origin claim relied extensively on language from that portion of Dolgaleva's amended complaint, from which the district court had quoted liberally during the Rule 12(b)(6) hearing. In the order, the district court detailed VBCPS's facially neutral, rolling hiring process and the fact that VBCPS had hired Liapina before Dolgaleva had interviewed. The district court also suggested that VBCPS had not discriminated against Dolgaleva on the basis of national origin by hiring Liapina, a Belarusian. Finally, though Dolgaleva sought to amend her complaint to add a claim of religious discrimination and to supplement her existing national-origin claim, the district court denied her leave to amend in a section that appeared to treat only the religious discrimination claim, but denied leave to amend completely. The district court denied leave to amend on the ground of futility.

8

Dolgaleva timely filed a notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291. We appointed amicus counsel to appear on behalf of Dolgaleva.

## II.

On appeal, Dolgaleva challenges the district court's denial of her leave to amend. Amicus challenges the district court's dismissal of Dolgaleva's complaint under Federal Rule of Civil Procedure 12(b)(6). We consider these contentions below.

## A.

We will begin with Dolgaleva's argument that the district court erred in denying her leave to amend. In the usual instance, we review the denial of leave to amend for abuse of discretion. Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999). But in this case, we may dispose of this argument, as well as VBCPS's threshold argument that Dolgaleva did not appeal the issue, by noting that Dolgaleva's religious discrimination claim is outside our subject-matter jurisdiction.

Before a plaintiff may file a complaint of discrimination in federal court, she must first timely exhaust her administrative remedy by filing a complaint with the EEOC. See Edelman v. Lynchburg College, 228 F.3d 503, 506 (4th Cir. 2000), rev'd on other grounds, 535 U.S. 106 (2002). In Virginia, a so-

9

called "deferral state," the time period is 300 days. Id. The failure to file a complaint with the EEOC in a timely manner deprives us of subject-matter jurisdiction over the claim. Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009). In general, we may raise and consider our subject-matter limitations at any time. GO Computer, Inc. v. Microsoft Corp., 508 F.3d 170, 175 n.2 (4th Cir. 2007).

In this case, Dolgaleva lives in Virginia, and thus she had 300 days from the discriminatory act to file her religious discrimination claim with the EEOC. By her own admission, Dolgaleva experienced the discriminatory act on August 25, 2006, the day she was informed of the hiring decision, but did not file a charge of religious discrimination with the EEOC until July 10, 2007, more than 300 days later. Her delay therefore deprived the district court of subject-matter jurisdiction over this claim and any amendment of that claim would have been futile.

B.

We now consider Amicus's argument that the district court erroneously dismissed Dolgaleva's complaint. Having determined that we lack jurisdiction to consider Dolgaleva's religious discrimination claim, the only claim before us is the national-origin claim.

10

1.

As a threshold matter, we must consider the scope of this issue, for Amicus and VBCPS differ on whether it is the amended complaint or the original complaint on national-origin discrimination that is properly before us. Amicus suggests that the amended complaint is before us because the district court relied on language from it during the Rule 12(b)(6) hearing and in the order.[2] VBCPS suggests that the original complaint is before us, because the district court's order denying leave to amend "explicitly address[ed] the Motion to Amend as a whole." Appellee's Br. at 10-11.

At the October 19 hearing, the district court quoted liberally from that portion of Dolgaleva's amended complaint dealing with her national-origin claim, and further cited to it throughout the order. This amended complaint stated factual allegations not present in the original complaint, which contained only seven single-sentence statements and offered no

---

[2] Amicus also suggests that Dolgaleva had a right to amend under Federal Rule of Civil Procedure 15(a)(1), which allows a plaintiff one amendment by right before a defendant files a responsive pleading. It is true that a motion to dismiss under Rule 12(b)(6) is not a "responsive pleading" under the Federal Rules. Domino Sugar Corp. v. Sugar Workers Local Union 392 of U.F.C.W.I., 10 F.3d 1064, 1069 n.1 (4th Cir. 1993). But it is also true that Dolgaleva's response to the motion to dismiss materially cured defects in her original complaint, so much so that she incorporated it by reference in her amended complaint. This may have constituted her free amendment. In light of the disposition we reach on this point, we need not decide.

11

factual allegations. The district court therefore implicitly accepted the amended complaint as an exercise of its "broad discretion to conform the pleadings to the arguments raised by the parties," Weyerheauser Co. v. Brantley, 510 F.3d 1256, 1267 (10th Cir. 2007), but also determined that VBCPS would not need to file a new motion to dismiss, see 6 Charles Alan Wright et al., Federal Practice and Procedure § 1476 (2d ed. & Supp. 2009). We therefore conclude that Dolgaleva's amended complaint on national-origin discrimination is before us.[3]

2.

We now consider whether the district court erred in dismissing Dolgaleva's amended complaint of national-origin discrimination under Rule 12(b)(6). Amicus argues that the district court made erroneous findings of fact under Rule 12(b)(6), and that her complaint alleges sufficient facts to surpass a motion to dismiss under that rule.

We review de novo a dismissal under Rule 12(b)(6). Monroe v. City of Charlottesville, Va., 579 F.3d 380, 385 (4th Cir.

---

[3] VBCPS also suggests that Dolgaleva did not appeal the denial of leave to amend on the national-origin claim. As we agree with Amicus that the district court effectively allowed Dolgaleva to amend her complaint on her national-origin claim, VBCPS's argument is moot. Also, since we understand Dolgaleva to argue that the district court erred by denying her leave to amend on this claim, that argument is moot as well.

12

2009). On a motion to dismiss, the district court's obligation is to test the sufficiency of the complaint to see if it alleges a claim for which relief can be granted. Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). In so doing, the court should evaluate the complaint in its entirety, as well as those documents attached to the complaint along with any that are integral and authentic. Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007). The district court may go beyond these documents, which constitute "the pleadings," in a Rule 12(b)(6) proceeding if it converts the proceeding to one for summary judgment. Fed. R. Civ. P. 12(d). Statements of counsel at a Rule 12(b)(6) hearing that raise new facts constitute matter beyond the pleadings. Hamm v. Rhone-Poulenc Rorer Pharms., Inc., 187 F.3d 941, 948 (8th Cir. 1999).

"While it may be preferable for a district court to trigger this conversion [to a summary judgment proceeding] explicitly, appellate courts may take the district court's consideration of matters outside the pleadings to trigger an implicit conversion." Bosiger v. U.S. Airways, 510 F.3d 442, 450 (4th Cir. 2007). This power to perform a sua sponte conversion at the appellate level serves judicial economy "by sparing the district court an unnecessary remand," when the non-moving party has had a full opportunity to respond to the matter outside the

pleadings anyway, id., or if the complaint would not have survived under a proper consideration of Rule 12(b)(6), see Thomas v. City of New York, 143 F.3d 31, 37 (2d Cir. 1998); GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997). When dealing with pro se litigants, the district court may still consider matter outside the pleadings, but it is particularly important that the litigant either have notice and a chance to file appropriate supplementary materials for a summary judgment proceeding, or at least have had a full opportunity to present all the matter the district court would have needed to render summary judgment. See Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir. 1979); see also Garaux v. Pulley, 739 F.2d 437, 439 (9th Cir. 1984) ("The rights of pro se litigants require careful protection where highly technical requirements are involved, especially when enforcing those requirements might result in a loss of the opportunity to prosecute . . . a lawsuit on the merits.").

In this case, rather than consider the face of Dolgaleva's complaint, the district court allowed VBCPS to dispute allegations in it by explaining its facially neutral, rolling hiring program and by suggesting that it could not have discriminated against Dolgaleva, a Russian, because it hired Liapina, a Belarusian. The district court then dismissed the

14

case on the bases offered by VBCPS.[4]  By allowing VBCPS to plead facts outside the pleadings, and relying on those facts to dismiss the complaint with prejudice,[5] the district court permitted VBCPS to demonstrate that it acted on a legitimate, non-discriminatory basis.  The district court did this at a procedurally improper time, and so erred.  See Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (finding error where the district court "assumed the existence of facts that favor defendants based on evidence outside plaintiffs' pleadings, [and] took judicial notice of the truth of disputed

---

[4]  We note, without deciding, that the district court's assumption that Russia and Belarus are of the same national origin, because they were once part of the Soviet Union, is of questionable accuracy.  The EEOC has stated that it will define national origin

> broadly as including, but not limited to, the denial of equal employment opportunity because of an individual's, or . . . her ancestor's, place of origin; or because an individual has the physical, cultural, or linguistic characteristics of a national origin group.

29 C.F.R. § 1606.1.  As the Supreme Court has said, "[t]he term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." Espinoza v. Farah Mfg. Co., Inc., 414 U.S. 86, 88 (1973) (footnote call number omitted).  As a matter of ancestry, it would seem that the nations comprising the former Soviet Union are distinct.

[5]  A dismissal which is designated "with prejudice" is "normally an adjudication on the merits for purposes of res judicata." Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 n.8 (5th Cir. 1993) (internal quotation marks and citation omitted).

15

factual matters"). We must still consider, however, whether the error requires reversal.

As we have explained, a district court errs by going outside the pleadings without giving the necessary notice, but the error is harmless if the parties had a full and fair opportunity to provide the court with discovery and disclosure materials suitable for summary judgment, see Bosiger, 510 F.3d at 450, or if the complaint would not have withstood the motion to dismiss on its face, see Thomas, 143 F.3d at 37; GFF Corp., 130 F.3d at 1384. At this juncture, we may confine ourselves to considering whether Dolgaleva's amended complaint could have withstood the motion to dismiss.

We review de novo the dismissal of a complaint under Rule 12(b)(6). Monroe, 579 F.3d 385. Though the complaint must "give[] the respondent fair notice of the basis for [the plaintiff's] claims,"[6] Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002), it must also allege "enough facts to state a claim

---

[6] Amicus suggests that at the pleading stage, the complaint need satisfy the four-factor test under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). This is incorrect. McDonnell Douglas outlined a burden of proof applicable to making out a prima facie case of discrimination when a plaintiff elects to make out animus by inference. See Swierkiewicz, 534 U.S. at 510-11 (overturning the Second Circuit's application of the McDonnell Douglas factors at the pleading stage). At the pleading stage, however, a complaint of national-origin discrimination need only provide sufficient factual allegations to support the elements of the claim. See Jordan v. Alternative Res. Corp., 458 F.3d 332, 346 (4th Cir. 2006).

to relief that is plausible on its face," Monroe, 579 F.3d at 386 (internal quotation marks and citation omitted); see also Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). Legal inferences drawn from the facts, unwarranted inferences, unreasonable conclusions, or arguments are not part of the consideration. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). We construe pro se complaints liberally, imposing "less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 94 (internal quotation marks and citation omitted); see also Atherton v. Dist. of Columbia Office of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (noting that pro se complaints "must be held to less stringent standards than formal pleadings" but that "even a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct'") (internal quotation marks and citations omitted).[7] Applying this framework, the Supreme Court in Swierkiewicz held that a plaintiff had sufficiently pleaded a complaint of national-origin discrimination when his complaint alleged a violation of Title VII and "detailed the events leading to his [adverse employment determination], provided relevant dates, and included . . . nationalities of at least

---

[7] This basic framework is applicable to both a Title VII claim and a § 1981 claim. Jordan, 458 F.3d at 343-44.

17

some of the relevant persons involved with his termination." 534 U.S. at 514.

Here, Dolgaleva brought a claim under Title VII and § 1981. In her complaint, she named VBCPS as the defendant. She also alleged that she applied for the teaching position in question in May 2006 and was the most qualified applicant based on her credentials and experience. Despite these qualifications, VBCPS deviated from its usual hiring procedures in hiring Liapina in early August 2006, before Dolgaleva's scheduled interview took place on August 24. Finally, Dolgaleva alleged that when she attempted to find out why she had not been considered for the position, a VBCPS employee told her that her Russian credentials were worthless, and that her Russian ancestry had been held against her in the hiring decision. Taking these allegations as true, as we must at this stage, we believe that the district court erred in finding them insufficiently pleaded by a pro se litigant to state a claim of national-origin discrimination. See Swierkiewicz, 534 U.S. at 514.

We therefore reverse the district court's dismissal of Dolgaleva's amended complaint as it pertains to her claim of national-origin discrimination, and remand that portion of her amended complaint for further proceedings consistent with this opinion.

18

III.

For the foregoing reasons, the final order of the district court is

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.